### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

```
------------------------------x
BRIAN K. MCMAHON, JR.,          :
                                :
     Petitioner,                :
                                :
v.                              :    Civil No. 3:05CV01896(AWT)
                                :
JOHN SIEMINSKI and              :
THERESA C. LANTZ,               :
                                :
     Respondents.               :
------------------------------x
```

### RULING ON PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, Brian K. McMahon, Jr., has filed a petition for writ of habeas corpus challenging his conviction for manslaughter in the first degree with a firearm in violation of Conn. Gen. Stat. §§ 53a-55(a)(3) and 53a-55a and application of an enhancement for use of a firearm during the commission of a felony pursuant to Conn. Gen. Stat. §53-202k.[1]  The petitioner makes four claims in his second amended petition challenging his conviction: first, that his conviction for manslaughter in the first degree with a firearm with simultaneous application of the sentence enhancement for use of a firearm subjected him to double

---

[1]The petitioner was also found guilty on one count of criminal trespass in the third degree in violation of Conn. Gen. Stat. § 53a-109(a)(2); three counts of illegal deer kills without a permit in violation of Conn. Gen. Stat. §26-86a(a); one count of violation of deer killing regulations pursuant to Conn. Gen. Stat. §26-82; two counts of violation of wild game regulations pursuant to Conn. Gen. Stat. § 26-66; and one count of violation of Sunday hunting regulations pursuant to Conn. Gen. Stat. § 26-73.  The petitioner is not challenging any of these convictions.

jeopardy in violation of the Fifth and Fourteenth Amendments;
second, that his trial counsel was ineffective in violation of
the Sixth and Fourteenth Amendments because he failed to properly
investigate and rebut land survey evidence produced by the state;
third, that the charge of manslaughter in the first degree with a
firearm is unconstitutionally vague in violation of the Fifth and
Fourteenth Amendments; and fourth, that the trial court erred in
finding that there was sufficient evidence to support a finding
of guilt on the charge of manslaughter in the first degree with a
firearm and the application of the sentence enhancement for use
of a firearm.  For the reasons discussed below, the petition for
writ of habeas corpus is being denied.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

"We presume that the state court's factual findings are
correct unless they are rebutted by clear and convincing
evidence." Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir.
2002) (citing 28 U.S.C. § 2254(e)(1)).  The following facts are
taken from the Connecticut Supreme Court's decision, State v.
McMahon, 257 Conn. 544 (2001):

> At approximately 6:50 a.m. on Sunday, October 25, 1998,
> the [petitioner] left his home in Coventry with a .44
> caliber rifle that he had purchased the week before from
> a private owner at a local bar.  He intended to hunt for
> deer, despite the fact that hunting season was closed and
> that he had neither a hunting license nor a deer permit.
> The [petitioner] entered a section of the woods directly
> across from the house in which he lived with his wife,
> his two year old son, his mother, his two brothers and
> his step-father.  The woods were privately owned, and

often used by residents for recreational activities,
including walking, hiking, bicycling and motorcycling.
The [petitioner] did not have permission from the owner
to hunt on the property and, because he was aware that he
was hunting illegally, he wore camouflage clothing to
avoid detection.

The [petitioner] walked approximately one quarter of
one mile into the woods, slightly uphill, on a designated
walking trail, and then turned off of the trail and
walked another one quarter of one mile.  Eventually, he
walked down a slope and sat down on a rock facing away
from the trail, and waited for deer.  After about fifteen
minutes, the [petitioner] heard from behind what he
thought was a deer snort.  He turned and walked
approximately fifteen to twenty feet back up the slope in
the direction of the sound.  The area was thickly wooded,
and the fall foliage was full and multicolored.  The
[petitioner], who is color-blind, perceived what he
thought was a deer, approximately 175 feet away.  After
a few minutes, the [petitioner] took aim and fired one
shot up the slope through the trees.  The bullet struck
the victim in the back and exited through his chest,
lodging in his arm.  The victim, a thirty-three year old
man, had been walking his dog along the trail and had
been either sitting or standing on a rock when the bullet
struck him.  The [petitioner] immediately heard the
victim moan and, suspecting that he had shot someone, the
[petitioner] ran back to his house for help.

The [petitioner] and his brother immediately
returned to the woods with an all-terrain vehicle and
confirmed that the [petitioner] had shot a person.  The
[petitioner] returned to his house a second time, to ask
his wife, a nurse's aide, to return to the woods with
him.  She did so and when they arrived back at the
victim's location, she could not detect the victim's
pulse.  Thereafter, the [petitioner] returned to his
house for a third time, by which time, his stepfather had
called the Coventry police department for assistance.
Although a helicopter arrived and transported the victim
from the scene, he had been on his back where he had
fallen for some time and he died as a result of the
gunshot wound.

McMahon, 257 Conn. at 548-49.

The petitioner was convicted on all counts after a trial to

the court.  "At trial, the [petitioner] admitted that he was

3

hunting on private property without the owner's permission, on a Sunday, without a license, a deer permit, or the required blaze orange outerwear, in full autumn foliage, and that he is colorblind."  Id. at 549.  Therefore, to contest the manslaughter charge, the petitioner argued that he did not have the requisite mental state of recklessness.  The trial court, in concluding that the state had proven beyond a reasonable doubt that the petitioner was guilty of manslaughter in the first degree with a firearm[2] cited eleven factors:

1.  He was hunting on private land without the owner's permission.
2.  He was hunting deer with a rifle during closed season.
3.  He was hunting on a Sunday.
4.  He was hunting without the required orange outerwear.
5.  He was hunting without a license.
6.  He was hunting without a deer permit.
7.  He was hunting in a thickly wooded area in the Autumn when the leaves were full and multicolored

---

[2] Connecticut General Statutes § 53a-55a provides: "(a) A person is guilty of manslaughter in the first degree with a firearm when he commits manslaughter in the first degree as provided in section 53a-55, and in the commission of such offense he uses, or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, shotgun, machine gun, rifle or other firearm.  No person shall be found guilty of manslaughter in the first degree and manslaughter in the first degree with a firearm upon the same transaction but such person may be charged and prosecuted for both such offenses upon the same information."
Connecticut General Statutes § 53a-55(a) provides in relevant part: "A person is guilty of manslaughter in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

at a time that he knew he was colorblind.
8.   He was shooting toward an area without a proper
     [sight]line.
9.   He was shooting without a proper backstop with a
     high-powered rifle that had a significant range.
10.  He was shooting over terrain that was convex so
     that he was shooting in an upward angle.
11.  He was shooting in an area that he knew or should
     have  known  was  frequented  by  people  and
     domesticated animals.

Transcript of Trial March 23, 2000 at 86-87, State of Connecticut
v. McMahon, CR98-67032 (Ct. Super. Ct. 2000).  Based on its
verdict, the court did "not consider[] the two requested lesser
included charges of manslaughter in the second degree with a
firearm and criminally negligent homicide."  Id. at 87-88.

     The trial court then examined the issue of whether the
sentence enhancement for use of a firearm[3] would apply.  First,
the trial court held "that Connecticut case law currently seems
to be clear that an enhancement under 53-202k may be applied to a
statute even though an . . . element of the underlying conviction
statute was the use of a deadly weapon or a firearm and even
though there was a mandatory minimum sentence in the underlying
charge for that reason."  Transcript of Trial April 24, 2000 at

_____

[3]Conn. Gen. Stat. § 53-202k provides: "Any person who
commits any class A, B or C felony and in the commission of such
felony uses, or is armed with and threatens the use of, or
displays, or represents by his words or conduct that he possesses
any firearm, as defined in section 53a-3, except an assault
weapon, as defined in section 53-202a, shall be imprisoned for a
term of five years, which shall not be suspended or reduced and
shall be in addition and consecutive to any term of imprisonment
imposed for conviction of such felony."

19, <u>State of Connecticut v. McMahon</u>, CR98-67032 (Ct. Super. Ct.

2000).  The trial court then found that the defendant had

"violated the element of 53-202k, which could expose him to the

enhancement at the time of sentencing."  <u>Id.</u> at 20.

> The [trial] court sentenced the defendant for his
> conviction of manslaughter in the first degree with a
> firearm to a term of thirty years incarceration,
> execution suspended after fourteen years, and five years
> probation.  The court subsequently applied the § 53-202k
> five year sentence enhancement to both the suspended and
> non-suspended portions of the split sentence.
> Accordingly, the trial court sentenced the defendant to
> a total effective sentence of thirty-five years
> incarceration, execution suspended after nineteen years,
> and five years probation.

<u>McMahon</u>, 257 Conn. at 550.

The defendant appealed to the Connecticut Supreme Court,

raising four issues[4]:

> First, . . . he contend[ed] that § 53a-55(a)(3) is
> unconstitutionally vague as applied to the facts of this
> case, because the statute fails to define the phrases
> 'extreme indifference to human life' and 'grave risk of
> bodily death.'  Second, he contend[ed] that the trial
> court unconstitutionally subjected him to double jeopardy
> by applying the sentence enhancement provision of General
> Statutes § 53-202k to his sentence for manslaughter in
> the first degree with a firearm.  Third, he claim[ed]
> that the trial court improperly applied the § 53-202k
> sentence enhancement to both the suspended and
> nonsuspended portions of his split sentence.  Finally,
> the defendant contend[ed] that the trial court improperly
> found that there was sufficient evidence to convict him
> of manslaughter in the first degree with a firearm in
> violation of §§ 53a-55(a)(3) and 53a-55a.

<u>Id.</u> at 547-48 (footnote omitted).

───────────────

[4]The petitioner does not pursue the third issue in the
instant habeas petition.

In considering the argument that the manslaughter statute is unconstitutionally vague as applied in the petitioner's case, the court found that:

> The defendant in the present case previously had been convicted of illegal hunting in 1992. When he fired the fatal shot, the defendant was hunting on private property without permission, during the closed season, on a Sunday. In addition, he was hunting without a license or a deer permit, and without the required blaze orange safety attire, in a wooded area thick with foliage with the knowledge that he is colorblind. The defendant shot a long-range, high-powered rifle without a proper sight line or a proper backstop into an area that he knew or should have known was frequented by people walking and riding their bicycles. Finally, when the defendant first suspected that he had shot a person, he failed to investigate immediately, and after he had confirmed his suspicions, he failed to render medical aid to the victim. The defendant also delayed in calling the police for assistance.

Id. at 556. The court then concluded that "[i]n light of the plain meaning and judicial interpretations of the phrases 'extreme indifference to human life' and 'grave risk of death,' we conclude that a person of ordinary intelligence would have had fair warning that the defendant's actions in this case were proscribed under § 53a-55(a)(3)." Id. at 556-57. In addition, the Connecticut Supreme Court held that application of the sentence enhancement for use of a firearm during the commission of a felony did not violate the defendant's right not to be subjected to double jeopardy, finding that application of the sentence enhancement was "consistent with the authority and intent of the legislature." Id. at 558. Finally, the court held

"that the evidence was sufficient to support the trial court's verdict," citing the same factors discussed above.  Id. at 569.[5]

The petitioner's petition for a writ of certiorari to the United States Supreme Court was denied.  McMahon v. Connecticut, 534 U.S. 1130 (2002).  The petitioner filed a petition for writ of habeas corpus in the Superior Court for the Judicial District of Tolland.  The petition was dismissed on February 3, 2004.  The petitioner's appeal of that decision to the Connecticut Appellate Court was dismissed on May 31, 2005, and his petition for certification to appeal to the Connecticut Supreme Court was denied on September 12, 2005.

On December 13, 2005, the petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 with this court.  The court dismissed claim V of the petition because it had not been exhausted in state court, and the case was stayed to allow the petitioner to exhaust state remedies.  The petitioner filed a second state habeas petition but withdrew that petition. On December 21, 2010, the parties agreed that the petitioner would only pursue claims II, III, IV and VI of his federal petition and the stay was lifted.

---

[5]The court also concluded, with regard to the defendant's third issue, that "[o]n the basis of the language of § 53-202k and its legislative history, we conclude that the trial court properly applied  § 53-202k's sentence enhancement to the defendant's split sentence."  Id. at 565-66.

8

## II.   LEGAL STANDARD

The standard the court applies to a petition for writ of habeas corpus is a stringent one.

> Under the framework established by Congress in the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief is available only when the state court judgment is "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court." "Clearly established federal law, as determined by the Supreme Court," refers to the "holdings, as opposed to the dicta, of [the Court's] decisions as of the time of the relevant state-court decision." A decision is "contrary to" clearly established federal law as determined by the Supreme Court "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." A decision is an "unreasonable application" of clearly established Supreme Court law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case."

Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002) (alterations in original) (internal citations omitted).

> "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner."

Price v. Vincent, 538 U.S. 633, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (alterations in original). A federal court reviewing a state court's determination of a petitioner's rights under the Constitution should bear in mind

that "State courts are coequal parts of our national judicial system and give serious attention to their responsibilities for enforcing the commands of the Constitution."  <u>Sawyer v. Smith</u>, 497 U.S. 225, 241 (1990).

**III. DISCUSSION**

The petitioner makes four claims challenging his conviction and sentence: first, that the trial court subjected him to double jeopardy in violation of the Fifth and Fourteenth Amendments by applying the sentence enhancement provision of Conn. Gen. Stat. § 53-202k to his sentence for manslaughter in the first degree with a firearm; second, that his trial counsel was ineffective in violation of the Sixth and Fourteenth Amendments because he failed to properly investigate land survey evidence produced by the state; third, that the charge of manslaughter in the first degree with a firearm should have been dismissed by the trial court because   § 53a-55(a)(3) is unconstitutionally vague in violation of the Fifth and Fourteenth Amendments as applied to his conduct; and fourth, that the trial court erred in finding that there was sufficient evidence to support a finding of guilt on the charge of manslaughter in the first degree with a firearm and application of the firearm enhancement.

**A.   Double Jeopardy (Claim II)**

The petitioner contends that the trial court's application of the § 53-202k sentence enhancement for the commission of a

10

class A, B, or C felony with a firearm to his sentence for the
crime of manslaughter in the first degree with a firearm
subjected him to double jeopardy by punishing him twice for the
same offense, namely, the use of a firearm.

"The Double Jeopardy Clause provides: '[N]or shall any
person be subject for the same offence to be twice put in
jeopardy of life or limb.'"  Witte v. United States, 515 U.S.
389, 395-96 (1995) (internal citations omitted) (alterations in
original).

> [T]he Fifth Amendment guarantee against double jeopardy
> is enforceable against the States through the Fourteenth
> Amendment.  That guarantee has been said to consist of
> three separate constitutional protections.  It protects
> against a second prosecution for the same offense after
> acquittal.  It protects against a second prosecution for
> the same offense after conviction.  And it protects
> against multiple punishments for the same offense.

North Carolina v. Pearce, 395 U.S. 712, 717 (1969).  "With
respect to cumulative sentences imposed in a single trial, the
Double Jeopardy Clause does no more than prevent the sentencing
court from prescribing greater punishment than the legislature
intended."  Missouri v. Hunter, 459 U.S. 359, 366 (1983).  "The
issue, though essentially constitutional, becomes one of
statutory construction."  State v. Anderson, 211 Conn. 18, 26
(1989); see also Ohio v. Johnson, 467 U.S. 493, 499 (1984)
("Because the substantive power to prescribe crimes and determine
punishments is vested with the legislature, . . . the question
under the Double Jeopardy Clause whether punishments are

11

'multiple' is essentially one of legislative intent.")

The petitioner argues that the test articulated by the Supreme Court in Blockburger v. United States, 284 U.S. 299 (1932), is not met in his case and therefore application of the firearm enhancement results in violation of the Double Jeopardy Clause. Blockburger states that "[a] single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." Id. at 304. The penalty for manslaughter in the first degree with a firearm is higher than the penalty for manslaughter in the first degree, because it incorporates an increase in the penalty for use of a firearm. The firearm enhancement in § 53-202k adds an additional five year consecutive sentence to the sentence for the underlying felony based on the use of a firearm. Under each statute, an increased penalty is imposed based solely on the underlying fact that the crime was committed by use of a firearm. Therefore, the court agrees that the Blockburger test is not met.

However, "the Blockburger test is a 'rule of statutory construction,' and because it serves as a means of discerning congressional purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent." Albernaz v. United States, 450 U.S. 333, 340 (1981).

12

Courts must yield to clear indications of legislative intent because "protection against cumulative punishments [] is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature." Ohio v. Johnson, 467 U.S. at 499.  Therefore "the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent."  Id.  "Whatever views may be entertained regarding severity of punishment, whether one believes in its efficacy or its futility, these are peculiarly questions of legislative policy."  Gore v. United States, 357 U.S. 386, 393 (1958).

Here, the Connecticut Supreme Court correctly identified North Carolina v. Pearce, 395 U.S. 711 (1969), and Missouri v. Hunter, 459 U.S. 359 (1983), as setting forth governing legal principles.  Then, consistent with Ohio v. Johnson, it proceeded to "ascertain and give effect to the apparent intent of the legislature."  McMahon, 257 Conn. at 560.  The court considered "the plain language of § 53-202k, its legislative history, and prior court decisions interpreting the statute . . ."  Id. at 562.  The court's analysis included the following:

> The express language of General Statutes § 53-202k provides in part that "[a]ny person who commits any class A, B or C felony" with a firearm "shall be imprisoned for a term of five years, which shall not be suspended or reduced and shall be in addition and consecutive to any term of imprisonment imposed for conviction of such felony." (Emphasis added.)  The use of the modifier "any" suggests an affirmative attempt by the legislature to

13

subject all class A, B or C felonies to § 53-202k's five
year enhancement.    Moreover,  the  statute  makes  no
exception for class A, B or C felonies that have, as an
element, the use of a firearm.
    It  is  important  to  note  that  the  absence  of  an
explicit exception for felonies committed with a firearm
under § 53-202k is in stark contrast to § 53a-55a; . . .
in  which  the  legislature  specifically  addressed  the
overlap  between  convictions  for  class  B  felonies  and
convictions  for  class  B  felonies  involving  a  firearm. .
. . The language that the legislature included in § 53-
202k, coupled with its demonstrated ability to create
exceptions  when  it  intends  to,  suggests  that  the
legislature did not intend to except a conviction for
manslaughter  with  a  firearm  under  § 53a-55a  from  the
application of the § 53-202k sentence enhancement.
                    . . .
    This court previously has examined the legislative
history  of  § 53-202k,  which  supports  the  state's
contention  that  the  legislature  intended  to  impose  § 53-
202k's enhancement provisions on all class A, B and C
felonies, including those that have, as an element, the
use of a firearm.  "Section § 53-202k was enacted as part
of  a  comprehensive  legislative  plan  for  dealing  with
assault weapons." <u>State v. Dash</u>, 242 Conn. at 148.   In
particular, "§ 53-202k was intended, '[to add] five years
to the end of <u>whatever other sentence</u> [a defendant is]
receiving as a consequence of those acts.'" <u>Id.</u> (Emphasis
added).

<u>Id.</u> at 561-62.[6]

_____

    [6]The petitioner contends, in his Motion for Clarification
(Doc. No. 79), that when the Connecticut legislature amended
Conn. Gen. Stat. § 53a-35a in 2007, thereby increasing the
maximum penalty for manslaughter in the first degree with a
firearm in violation of Conn. Gen. Stat. § 53a-55a, it did not
consider the implications of simultaneous imposition of an
increased penalty under § 53a-35a and application of the sentence
enhancement pursuant to Conn. Gen. Stat. § 53-202k.  He further
contends that in <u>McMahon</u>, the court simply considered the
legislative history of Conn. Gen. Stat. § 53-202k rather than
analyzing the legislative history of Conn. Gen. Stat. § 53-35a
for the 2007 increase in the maximum penalty, and thus the
Connecticut Supreme Court's analysis in <u>McMahon</u> is incomplete and
need not be deferred to by this court.  The petitioner's argument
is unpersuasive.  The above-quoted analysis from <u>McMahon</u>

Based on the foregoing, this court concludes that the Connecticut Supreme Court reasonably applied well-established United States Supreme Court precedent in reaching its conclusion that the trial court's application of the § 53-202k sentence enhancement did not violate the Double Jeopardy Clause.  This court must defer to the Connecticut Supreme Court's analysis of the pertinent statutes, which shows that the legislature intended § 53-202k to apply to convictions for manslaughter in the first degree with a firearm.  See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").  Therefore, the petition for writ of habeas corpus is being denied as to the double jeopardy claim.

**B.   Ineffective Assistance of Counsel (Claim III)**

The petitioner argues that his trial counsel was ineffective in violation of the Sixth and Fourteenth Amendments because trial counsel did not hire a land surveyor to investigate and rebut erroneous evidence introduced by a land surveyor hired by the state.  The Connecticut Superior Court, in the state habeas

---

addresses legislative intent as to Conn. Gen. Stat. § 53-202k and all class A, B, or C felonies and was not limited to the provisions of the Connecticut General Statutes in effect at the time § 53-202k was enacted.  Moreover, the court took note in McMahon, using § 53a-55a as the example, of the fact that the Connecticut legislature has demonstrated the ability to create an exception where one is intended.

proceeding, is the last court to provide a reasoned decision on the merits of the petitioner's ineffective assistance of counsel claim.  Therefore, it is the Connecticut Superior Court's decision in the state habeas proceeding which the court must review in addressing the petitioner's pending federal claim. Because the Connecticut Superior Court's determination that trial counsel's assistance was not ineffective was neither contrary to, nor involved an unreasonable application of, clearly established Federal law as determined by the United States Supreme Court, the petitioner is not entitled to habeas corpus relief with respect to his ineffective assistance of counsel claim.

>        A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).

>    [A] habeas petitioner "must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state court applied Strickland incorrectly.  Rather, he must show that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner."

Cox v. Donnelly, 387 F.3d 193, 197 (2d Cir. 2004) (quoting Bell v.
Cone, 535 U.S. 685, 689-99 (2002)).

"'Judicial scrutiny of a counsel's performance must be
highly deferential . . . . [and] every effort [must] be made to
eliminate the distorting effects of hindsight.'  We also apply
the presumption that counsel's conduct 'might be considered sound
trial strategy.'" Cox v. Donnelly, 387 F.3d 193, 198 (2d Cir.
2004) (quoting Strickland, 466 U.S. at 689) (alterations in
original).  "[A] strategic decision is a 'conscious, reasonably
informed decision made by an attorney with an eye to benefitting
his client.'" Id. (quoting Pavel v. Hollins, 261 F.3d 210, 218
(2d Cir. 2001)).  "[S]trategic choices made after thorough
investigation of law and facts relevant to plausible options are
virtually unchallengeable; and strategic choices made after less
than complete investigation are reasonable precisely to the
extent that reasonable professional judgments support the
limitations on investigation." Strickland, 466 U.S. at 690-91.

The Connecticut Superior Court correctly identified and
applied the two-prong test of Strickland v. Washington as setting
forth governing legal principles.  See McMahon v. Warden, No.
CV020003826S, 2004 WL 377039 at **3-4 (Conn. Super. Feb. 3,
2004).  The Connecticut Superior Court addressed five claims of
ineffective assistance of counsel, one of which, i.e. that trial
counsel failed to hire a land surveyor to investigate and rebut

17

erroneous evidence introduced by a land surveyor hired by the
state, the petitioner brings here.  As to that claim, the
Connecticut Superior Court addressed both prongs of <u>Strickland</u>.

The petitioner contends that trial counsel's decision to
limit the investigation by not hiring a land surveyor did not
constitute reasonable professional judgment.  The Connecticut
Superior Court concluded that trial counsel "made a strategic
choice not to utilize an expert land surveyor to rebut [the
state's witnesses'] testimony and to rely on cross-examination to
attack the credibility of the land survey evidence."  <u>McMahon v.
Warden</u>, No. CV020003826S, 2004 WL 377039 at *4 (Conn. Super. Feb.
3, 2004).  That conclusion was based on the court's finding that
trial counsel

> did, in fact, investigate the state's allegations by
> employing the services of Caputo, a former state police
> officer experienced in crime scene investigation, to
> photograph the crime scene, review the police reports,
> interview witnesses and issue a report.  Based on the
> results of Caputo's investigation, [trial counsel]
> determined that the land survey evidence was not
> favorable to the petitioner.  He also determined,
> however, that the land survey evidence would not
> seriously undermine the petitioner's state of mind
> defense. . . . Through cross-examination, Norris got
> Jordan to admit that his findings were largely based on
> assumed facts supplied to him by law enforcement
> officials.

<u>Id.</u> Thus, the Connecticut Superior Court found that trial
counsel had hired an investigator to examine the crime scene and
decided, based on the investigator's report, that further
investigation by a land surveyor would not be favorable to the

petitioner, but, rather, a better strategy would be to attack the state's land survey report by means of cross-examination, as opposed to attempting to rebut his testimony with a defense expert.  In light of the foregoing, the Connecticut Superior Court was not objectively unreasonable in finding that failure to hire a land surveyor was the result of a strategic decision rather than the result of deficient performance.

The Connecticut Superior Court also concluded that the petitioner had failed to prove that he suffered prejudice.  That conclusion was based on the court's finding that

> [t]he petitioner testified at the criminal trial that he was an experienced hunter, that he was sure that he had seen a deer and heard a deer snort, that he had fired from a supported stance to ensure an accurate shot and that he had a clear view when he discharged his weapon. Had the trial court credited the petitioner's testimony, it is unlikely that the state would have proven that the petitioner acted recklessly and the absence of an investigation would have been inconsequential.

Id. Based on the foregoing, the Connecticut Superior Court was not objectively unreasonable in finding that failure to hire a land surveyor did not prejudice the petitioner.

Therefore, the petition for writ of habeas corpus is being denied as to the ineffective assistance of counsel claim.

### C. Void for Vagueness (Claim IV)

The petitioner contends that, as applied to the facts of his case, Conn. Gen. Stat. § 53a-55(a)(3) is unconstitutionally vague in violation of the Fifth and Fourteenth Amendments because the

legislature failed to define the phrases "extreme indifference to
human life" and "grave risk of death."  Because the Connecticut
Supreme Court's determination that Conn. Gen. Stat. § 53a-
55(a)(3) is not unconstitutionally vague as applied to the
petitioner's conduct was neither contrary to, nor involved an
unreasonable application of, clearly established Federal law as
determined by the United States Supreme Court, the petitioner is
not entitled to habeas corpus relief on this claim.

> As generally stated, the void-for-vagueness
> doctrine requires that a penal statute define the
> criminal offense with sufficient definiteness that
> ordinary people can understand what conduct is
> prohibited and in a manner that does not encourage
> arbitrary and discriminatory enforcement.

Kolender v. Lawson, 461 U.S. 352, 357 (1983).  This passage from
Kolender was relied upon by the Connecticut Supreme Court.  See
McMahon, 257 Conn. at 551-52.  "[B]ecause we assume that man is
free to steer between lawful and unlawful conduct, we insist that
laws give the person of ordinary intelligence a reasonable
opportunity to know what is prohibited, so that he may act
accordingly."  Grayned v. City of Rockford, 408 U.S. 102, 108
(1972). "[T]he touchstone [of the fair warning requirement] is
whether the statute, either standing alone or as construed, made
it reasonably clear at the relevant time that the defendant's
conduct was criminal." United States v. Lanier, 520 U.S. 259, 267
(1997).  Under Connecticut law, a statute is assessed for
vagueness in relation to the conduct of the petitioner in

question; the court does not ask whether there is any set of
facts to which application of the statute may be unclear.  <u>See</u>
<u>State v. Wilchinski</u>, 242 Conn. 211, 218 (1997) ("Our analysis
terminates once we determine that the statute, strictly
construed, is not vague as applied to the defendant's conduct.").

> If the meaning of a statute can be fairly
> ascertained a statute will not be void for vagueness
> since "[m]any statutes will have some inherent vagueness,
> for in most English words and phrases there lurk
> uncertainties."    References to judicial opinions
> involving the statute, the common law, legal
> dictionaries, or treatises may be necessary to ascertain
> a statute's meaning to determine if it gives fair
> warning. Thus, prior decisions of this court which
> delineate a statute's reach can constitute sufficient
> notice of the acts prohibited to render the statute
> constitutional as applied to the particular facts of a
> case.

<u>State v. Pickering</u>, 180 Conn. 54, 62-63 (1980) (alteration in
original) (internal citations omitted) (quoting <u>Rose v. Locke</u>,
423 U.S. 48, 49-50 (1975)).

The Connecticut Supreme Court determined that Conn. Gen.
Stat. § 53a-55(a)(3) was not void for vagueness because, given
the circumstances surrounding the petitioner's conduct, "a person
of ordinary intelligence would have had fair warning that the
defendant's actions in this case were proscribed under § 53a-
55(a)(3)."  <u>McMahon</u>, 257 Conn. at 557.  Those circumstances
included the fact that the petitioner had a previous conviction
for illegal hunting; that the petitioner was hunting on private
property without permission, during the closed season, on a

Sunday; that he was hunting without a license or deer permit, and without wearing the required blaze orange safety attire, in a wooded area thick with foliage with the knowledge that he is color-blind; that he shot a long-range high-powered rifle without a proper sight line or backstop into an area that he knew or should have known was frequented by pedestrians walking or riding their bicycles; that when the petitioner suspected he had shot a person he did not investigate immediately, and after confirming his suspicions, the petitioner failed to render medical aid to the victim; and that the petitioner delayed calling the police for assistance.  Given these facts, the Connecticut Supreme Court was not objectively unreasonable in concluding that the petitioner's right to notice of what conduct is prohibited was not violated because a person of ordinary intelligence would have had fair warning that the actions taken by the petitioner exhibited an extreme indifference to human life and posed a grave risk of death.

The petitioner argues that Connecticut's negligent hunting statute, Conn. Gen. Stat. § 53a-217e, specifically defines the violation of certain hunting provisions as being negligent rather than reckless, thereby precluding a finding that the petitioner acted recklessly.  This argument is unpersuasive.  The fact that one or more of the circumstances surrounding the petitioner's conduct would, standing alone, constitute negligent hunting in

violation of § 53a-217e does not support the conclusion that the sum total of the actions taken by the petitioner did not amount to an extreme indifference to human life or pose a grave risk of death.

Therefore, the petition for writ of habeas corpus is being denied as to the void for vagueness claim.

**D. Sufficiency of the Evidence (Claim VI)**

The petitioner argues that there was insufficient evidence for the trial court to find that he had acted with the requisite mental state of recklessness.  Because the Connecticut Supreme Court's determination that the trial court could have found, beyond a reasonable doubt, that the defendant was guilty of manslaughter in the first degree with a firearm was neither contrary to, nor involved an unreasonable application of, clearly established Federal law as determined by the United States Supreme Court, the petitioner is not entitled to habeas corpus relief on this claim.

> In a challenge under 28 U.S.C. § 2254 to the evidentiary sufficiency of a state criminal conviction, we review the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial.  Petitioner bears a "very heavy burden" in convincing a federal habeas court to grant a petition on the grounds of insufficient evidence.

Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002) (internal citations omitted).

The Connecticut Supreme Court set forth the following standard of review, quoting from its opinion in State v. Wilcox, 254 Conn. 441 (2000):

> In reviewing a sufficiency of the evidence claim, we apply a two-part test.  First, we construe the evidence in the light most favorable to sustaining the verdict.  Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt.

Wilcox, 254 Conn. at 463 (alterations in original).  While the Connecticut Supreme Court did not cite any United States Supreme Court case in its review of this claim, the standard in Wilcox mirrors the federal standard set forth by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307.  In Jackson, the Supreme Court articulated the standard as "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 419 (emphasis in original).  Thus, the Connecticut Supreme Court's decision is not contrary to federal law as determined by the United States Supreme Court.  See Early v. Packer, 537 U.S. 3, 8 (2002) (holding that state court need not be aware of nor cite relevant Supreme Court cases, so long as the reasoning and decision do not contradict the applicable law); see also McDaniel v. Brown, 130 S. Ct. 665, 672 n.4 (2010) (In determining that court of appeals erred in concluding that state

supreme court's decision was contrary to <u>Jackson</u>, the Court
stated "[i]t is of little moment that the [State] Supreme Court
analyzed whether a 'reasonable' jury could be convinced of guilt
beyond a reasonable doubt, rather than asking whether a
'rational' one could be convinced of each element of guilt; a
<u>reasonable</u> jury could hardly be convinced of guilt unless it
found each element satisfied beyond a reasonable doubt."
(emphasis in original))

"When considering the sufficiency of the evidence of a state
conviction '[a] federal court must look to state law to determine
the elements of the crime.'" <u>Ponnapula</u>, 297 F.3d at
179 (alterations in original) (quoting <u>Quartararo v. Hanslmaier</u>,
186 F.3d 91, 97 (2d Cir. 1999)).  Here, the petitioner challenges
whether there was sufficient evidence to show that he acted with
a reckless state of mind.

The Connecticut Supreme Court reasonably applied the
standard set forth in <u>Jackson</u> to the facts of the petitioner's
case.  It recited the elements for manslaughter in the first
degree that the state had been required to prove beyond a
reasonable doubt.  It recognized that "the difference between the
mental states required for criminal negligence and recklessness
is clear.  '[C]riminal negligence concerns a [defendant's]
failure to realize [a] risk.'" <u>McMahon</u>, 257 Conn. at 568 (quoting
<u>State v. Bunkley</u>, 202 Conn. 629, 643 (1987)) (alterations in

original).  The Connecticut Supreme Court noted that "the trial court recognized that recklessness, pursuant to General Statutes § 53a-3 (13), requires a showing that the defendant was 'aware of and consciously disregard[ed] a substantial and unjustifiable risk . . . of such nature and degree that disregarding it constitute[d] a gross deviation from the standard of conduct that a reasonable person would [have observed] in the situation. . . ."  Id. (quoting State v. Spates, 176 Conn. 227, 236-37 (1978)) (alterations in original).  The court then stated:

> "We have long recognized that a defendant's state of mind can usually be proven only by circumstantial evidence . . . . Recognizing the difficulty in proving by direct evidence that an accused subjectively realized and chose to ignore a substantial risk . . . we have long held that the state of mind amounting to recklessness . . . may be inferred from conduct . . . . It requires little extension of this principle to hold that such relevant conduct may constitute a course of behavior rather than one specific act."

Id. at 568-69 (quoting State v. Salz, 226 Conn. 20, 32-33 (1993)) (alterations in original).

Applying those principles to the facts of the petitioner's case, the Connecticut Supreme Court concluded that:

> The evidence was sufficient to support the trial court's verdict.  As we noted previously, it is undisputed that the defendant was hunting on private land without permission, on a Sunday, during closed season.  In addition, he was hunting without the required blaze orange outerwear.  In fact, the defendant told police that he specifically had not worn the orange outerwear in order to avoid being caught for hunting illegally.  The defendant was not licensed to hunt nor did he have a permit to hunt deer. Moreover, the defendant was hunting in an area thick with autumn foliage, fully aware of the

> fact that he is color-blind.
>       At the time of the incident, the defendant shot his
> long-range rifle without a proper sightline or a proper
> backstop toward a wooded area that he knew or should have
> known was frequented by people.  Upon realizing that he
> may have shot a person, the defendant did not rush to the
> victim's aid.  Instead, he ran home.  Indeed, he returned
> home twice before his stepfather called the Coventry
> police.  At no time during these trips did the defendant
> administer medical aid to the victim.

Id. at 569.  Given these facts, the Connecticut Supreme Court was not objectively unreasonable in concluding that the evidence was sufficient to support the trial court's verdict.  While the petitioner argues that he could not have exhibited a reckless disregard to human life so long as he thought he was shooting at a deer, the summary of the evidence relied upon by the trial court and the Connecticut Supreme Court makes it clear that the relevant conduct on the part of petitioner included conduct after the point in time in which he knew he had shot a human being.

The petitioner has failed to meet his heavy burden of showing that no rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the evidence adduced at trial.  Therefore, the petition for writ of habeas corpus is being denied as to the insufficiency of the evidence claim.

**IV.  CONCLUSION**

For the foregoing reasons the Second Amended Petition for Writ of Habeas Corpus (Doc. No. 18) is DENIED.

It is so ordered.

27

Signed this 27th day of June, 2013 at Hartford, Connecticut.


                                    _____/s/AWT_____
                                      Alvin W. Thompson
                                 United States District Judge